**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                        :
REGINALD CURRY,                         :
                                        :   Civil Action No. 04-4431 (FLW)
              Petitioner,               :
                                        :
        v.                              :        **O P I N I O N**
                                        :
DAVID PARRISH, et al.,                  :
                                        :
              Respondents.              :
_____ :

**APPEARANCES:**

Reginald Curry, Pro Se
#69590/738804A
Riverfront State Prison
P.O. Box 9104
Camden, NJ 08101

Johanna Barba Jones
Deputy Attorney General
Office of the Attorney General
Appellate Bureau
P.O. Box 086
Trenton, NJ 08625

**WOLFSON, District Judge**

    Petitioner, Reginald Curry, filed the within petition for a
Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  Respondents
have filed an Answer.  The Court has considered all submissions.
For the reasons set forth below, the Petition will be denied.

**BACKGROUND**

1.   Factual Background

The facts of this case were recounted below and this Court, affording the state court's factual determinations the appropriate deference, see 28 U.S.C. § 2254(e)(1), will simply reproduce the Appellate Division's factual recitation:

> [In 1994, an investigation by the New Jersey State Police Organized Crime Bureau into loan-sharking activities was initiated after a loan-sharking victim contacted police.]
>
> In May 1995, Sommers [a loan-sharking victim] was contacted by defendant [Curry], who repeatedly told Sommers that it would be in his best interest to pay his debt to Dinonno [leader of the racketeering ring] if Sommers did not want anything to happen to him or his family.  On June 7, 1995, Sommers contacted Detective Fish [of the Organized Crime Bureau] to inform him about the threats.  On June 8, 1995, Detective Fish listened to a telephone conversation between defendant and Sommers, during which defendant threatened harm if the money was not paid.
>
> On June 12, 1995 defendant telephoned Sommers and told Sommers to meet him and another person the next morning to pay $15,000 toward the monies owed.  Working with Detective Keith Ingling of the Monmouth County Prosecutor's Office, Sommers made two telephone calls to defendant, both of which were recorded.  During the first conversation, defendant also had co-defendant Morris Korman speak with Sommers.  In the second conversation, defendant had Korman and Dinonno both speak with Sommers.  In this latter conversation, Sommers made arrangements to meet with defendant and Korman at the Holiday Inn in Eatontown on June 13, 1995 at 5:30 p.m.
>
> At approximately 5:30 p.m., defendant paged Sommers.  Upon returning the page, Sommers was directed to meet with Korman and defendant at the Shop Rite parking lot on Route 36 in West Long Branch.  Detective Ingling sent a surveillance team to the new location,

and Sommers drove into the parking lot.  Defendant and
Korman were observed driving into the Shop Rite lot in
a vehicle driven by Korman.  They pulled up next to
Sommers' vehicle and asked him if he had "it;" Sommers
replied "yes," and defendant told Sommers to follow
them.  As Korman and defendant attempted to leave the
parking lot, they were apprehended and transported to
West Long Branch Police headquarters.

See State v. Curry, A-5971-00T4 (Sept. 25, 2003), pp. 8-9.

2.  Procedural History

In 1995, a Monmouth County Grand Jury indicted Petitioner,

along with co-defendants on ten counts, including: second-degree

conspiracy to commit racketeering, contrary to N.J.S.A. 2C:41-

2(d) and 2C:2-5 (count one); first-degree racketeering, contrary

to N.J.S.A. 2C:41-2 and 2C:41-3(a) (count two); six counts of

second-degree criminal usury, contrary to N.J.S.A. 2C:21-19(a)(1)

and 2C:2-6 (counts three, eleven, twelve, thirteen, twenty-one,

and twenty-two); second-degree engaging in the business of

criminal usury, contrary to N.J.S.A. 2C:21-19(b) (count twenty-

four); and second-degree attempted extortion, contrary to

N.J.S.A. 2C:20-5, 2C:2-6, and 2C:5-1 (count thirty-eight).

Petitioner was tried by jury, in absentia, from February 3,

1997 to February 11, 1997 in the Superior Court of New Jersey,

Law Division, Monmouth County ("Law Division").  The jury found

the petitioner guilty on all counts.  On August 1, 1997,

Petitioner was sentenced to an aggregate sentence of 20 years

imprisonment with 10 years of parole ineligibility.

3

Between his conviction and sentencing, on May 30, 1997 Petitioner filed a motion for a new trial based upon newly discovered evidence.  It was re-filed by counsel on January 8, 1999.  Petitioner had alleged that the chief witness for the State had disclosed to a fellow inmate that he had lied at Petitioner's trial concerning Petitioner's involvement in the crimes.  A hearing was held in the Law Division on February 17, 1999.  After hearing the testimony of many witnesses, the motion was denied.  The order denying the motion was entered on February 23, 1999.

In the meantime, instead of filing a direct appeal from the judgment of conviction, on May 30, 1998, Petitioner filed a motion for Post-Conviction Relief ("PCR") in the trial court.  He alleged ineffective assistance of counsel and other issues.  An order denying the PCR motion was entered on January 4, 1999.

Petitioner separately appealed the denial of the motion for the new trial and the denial of the PCR motion.  The Superior Court of New Jersey, Appellate Division ("Appellate Division") consolidated the appeals and affirmed the decisions on June 5, 2000.  See State v. Curry, A-3828-98T4 and A-3829-98T4 (June 5, 2000).  The New Jersey Supreme Court denied Petitioner's petitions for certification.  See State v. Curry, 167 N.J. 86 (2001), 167 N.J. 90 (2001).

On June 27, 2001, Petitioner filed a motion to appeal the judgment of conviction nunc pro tunc in the Appellate Division. The motion was granted on August 10, 2001.  In a per curiam decision dated September 25, 2003, the Appellate Division affirmed the conviction and sentence.  See State v. Curry, A-5971-00T4 (Sept. 25, 2003).  On November 24, 2003, Petitioner's petition for certification was denied by the New Jersey Supreme Court.  See State v. Curry, 178 N.J. 252 (2003).

The instant petition was received and filed on September 14, 2004.  On September 23, 2004, Petitioner was advised of his rights pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000). On November 29, 2004, Respondents filed an Answer and the state court record.

## DISCUSSION

### A.   Petitioner's Claims.

Petitioner asserts the following arguments for habeas relief:

1.   Prejudicial and inflammatory evidence denied Petitioner the right to a fair trial.

2.   Petitioner was denied his right to counsel.

3.   An error in the jury charge denied Petitioner a fair trial.

See Petition for Writ of Habeas Corpus, ¶ 12.

5

Petitioner has raised the instant claims before the New Jersey state courts.  Therefore, they are properly before this Court for a decision on the merits.  <u>See</u> 28 U.S.C. § 2254(b)(1).

**B.  <u>Timeliness</u>**

Respondents argue that the instant petition should be dismissed as time-barred, pursuant to 28 U.S.C. § 2244(d)(1)(A).[1] Respondents concede that "the strict language of 28 U.S.C. § 2244(d)(1)(A) would suggest that petitioner's time did not begin to run until February 22, 2004 (90 days after the New Jersey Supreme Court denied certification of his appeal <u>nunc</u> <u>pro</u> <u>tunc</u>) . . . ." (Answer, pp. 19-20).  However, Respondents argue that to

_____

[1]     Title 28 of the United States Code, section 2244(d)(1) creates a one year statute of limitations on habeas corpus petitions and reads in pertinent part:

(d)(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –
        (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
        (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
        (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
        (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

find his petition timely would "reward defendant's abuse of the system.  The more appropriate course would be to total the number of days in which defendant failed to collaterally or directly attack his conviction, acknowledging that 28 U.S.C. § 2244(d)(2) tolled the statute while defendant pursued his motion for post-conviction relief."  (Answer, p. 20).

Thus, Respondents argue that the time between Petitioner's judgment of conviction (August 5, 1997) and filing of his PCR motion (May 30, 1998) should be counted towards the limitation period (298 days).  Respondents argue that the 298 days should be added to the time between the New Jersey Supreme Court's denial of certification of the PCR motion (January 3, 2001), and notice of direct appeal (June 27, 2001), which is 175 days.  Respondents further note that the time between the date Petitioner's judgement of conviction became final (February 22, 2004), and the date the instant petition was filed (September 20, 2004),[2] should also be counted towards this period.  Thus, Respondents contend that 684 days passed before Petitioner filed this petition.  Respondents cite no law to suggest that this calculation is correct.

This Court disagrees with Respondents' argument and finds that the instant petition is timely.  To begin, § 2244(d) clearly

---

[2]  The Court notes that the docket for this action demonstrates that the instant petition was filed on September 14, 2004, not September 20, as Respondents contend.

sets forth the four possible starting points for the running of the one-year limitations period.  The one starting point that applies to Petitioner's case is "the date on which the judgment became final by the conclusion of direct review or the expiration of time for seeking such review."  28 U.S.C. § 2244(d)(1)(A). The "time for seeking such review" includes the 90-day period for filing a petition for writ of certiorari in the United States Supreme Court.  See Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000); Morris v. Horn, 187 F.3d 333, 337 n.1 (3d Cir. 1999); U.S. Sup. Ct. R. 13.

Petitioner's direct review did not conclude until February 22, 2004, 90 days after the New Jersey Supreme Court denied his petition for certification on his direct appeal.  Therefore, his statute of limitations did not begin to run until then. Therefore, the Court concludes that the time between the date on which Petitioner could have timely filed a direct appeal of his judgment of conviction, and the time in which he filed his direct appeal nunc pro tunc, should not be counted towards the one-year limitations period.

This Court also disagrees with Respondents' statement that deeming his petition timely would reward Petitioner's "abuse" of the system.  Petitioner properly filed under New Jersey law a request to appeal nunc pro tunc, meaning "now for then," which was granted.  This Court's conclusion is consistent with the

requirement that state-court prisoners exhaust their state court remedies prior to filing for habeas relief.  <u>See</u> 28 U.S.C. § 2254(b)(1)(A)(stating that the writ shall not be granted unless "the applicant has exhausted the remedies available in the courts of the State . . . .").  Further, 28 U.S.C. § 2254(c) directs that: "An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, <u>by any available procedure</u>, the question presented." (Emphasis added).  In this case, Petitioner utilized an available state procedure, i.e., the <u>nunc</u> <u>pro</u> <u>tunc</u> appeal, to exhaust his state court remedies and comply with the habeas statute.[3]

Hence, Petitioner's direct review became "final" for purposes of the habeas statute's limitations period on February 22, 2004.  The instant petition was filed in this Court on September 14, 2004, less than a year later.  Thus, the instant petition is timely.

---

[3]  <u>See</u>, <u>e.g.</u>, <u>State v. Simmons</u>, 331 N.J. Super. 512 (App. Div. 2000).  In <u>Simmons</u>, the defendant requested that his attorney file a direct appeal on his behalf; however, it was never filed.  Defendant then filed a petition for a writ of habeas corpus in the federal District Court, which was denied for failure to exhaust state court remedies, as Defendant could have moved in the state court to file his appeal <u>nunc</u> <u>pro</u> <u>tunc</u>.  <u>See</u> <u>Simmons</u>, 331 N.J. Super. at 517.

C.   **Standards Governing Petitioner's Claims.**

Section 2254 of Title 28, United States Code, provides that the district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

Under 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), federal courts in habeas corpus cases must give considerable deference to determinations of the state trial and appellate courts.  See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied 534 U.S. 919 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996)(citing Parke v. Raley, 506 U.S. 20, 36 (1992)).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus.  The statute reads as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

10

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362, 412-13 (2000), the Supreme Court explained the application of § 2254(d)(1). The Court analyzed subsection 1 as two clauses: the "contrary to" clause and the "unreasonable application" clause. The Court held that under the "contrary to" clause, "a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. A federal court may grant the writ under the "unreasonable application" clause, if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. Habeas relief may not be granted under the "unreasonable application" clause unless a state court's application of clearly established federal law was objectively unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief. See id. at 411; see also Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000), cert. denied, 532 U.S. 980 (2001); Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 891 (3d Cir.), cert. denied, Matteo v. Brennan, 528 U.S. 824 (1999). Thus, the federal court must decide whether the state court's application of federal law, when

11

evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent.  See Werts, 228 F.3d at 197; see also Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005).

With regard to 28 U.S.C. § 2254(d)(2), a federal court must confine its examination to evidence in the record.  See Abu-Jamal v. Horn, 2001 WL 1609690, at *12 (E.D. Pa. December 18, 2001). In addition, the state court record should be reviewed to assess the reasonableness of the state court's factual determinations. See id.  Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court."  Id.; see also 28 U.S.C. § 2254(e)(1).  The Court of Appeals for the Third Circuit has ruled that this presumption of correctness can be overcome only by clear and convincing evidence.  See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir. 2001)(citing 28 U.S.C. § 2254(e)(1)).  "A finding that is well-supported and subject to the presumption of correctness is not unreasonable."  Abu-Jamal, 2001 WL 1609690 at *12 (citing Duncan, 156 F.3d at 198).

Furthermore, federal habeas courts ordinarily refrain from revisiting credibility determinations as "it would be wholly inappropriate for a federal court to repastinate soil already thoroughly plowed and delve into the veracity of the witnesses on habeas review."  Sanna v. Dipaolo, 265 F.3d 1, 10 (1st Cir.

2001).  A habeas petitioner therefore "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

**D.   Petitioner's Claim Regarding Admission of Evidence.**

Petitioner argues that his trial was tainted by prejudicial and inflammatory testimony concerning crimes of violence which had absolutely no relevance to the trial.  Specifically, Petitioner objects to his co-defendant's testimony referencing loaded firearms and a drive-by shooting.

The Appellate Division examined this claim on direct appeal, finding:

> The evidence concerning possession of weapons and
> violence committed by members of Dinonno's racketeering
> enterprise before and during defendant's involvement
> was properly admitted to prove the crime of conspiracy
> to commit racketeering, as well as the existence of a
> racketeering enterprise and a pattern of racketeering

13

activity.  We also conclude that the prejudicial nature
of evidence did not outweigh its probative value.

See State v. Curry, A-5971-00T4 (Sept. 25, 2003), pp. 12-13.

With respect to Petitioner's claim that the trial court
erred in admitting the above-described testimony, it has been
held that federal courts must afford the states deference in
their determinations regarding evidence and procedure.  See Crane
v. Kentucky, 476 U.S. 683, 690 (1986)(stating "we have never
questioned the power of the States to exclude evidence through
the application of evidentiary rules that themselves serve the
interests of fairness and reliability, even if the defendant
would prefer to see that evidence admitted").  It is
well-established that "a state court's misapplication of its own
law does not generally raise a constitutional claim.  The federal
courts have no supervisory authority over state judicial
proceedings and may intervene only to correct wrongs of
constitutional dimension."  Smith v. Horn, 120 F.3d 400, 414 (3d
Cir. 1997)(citations omitted), cert. denied, 522 U.S. 1109
(1998).

Assuming, arguendo, that the trial judge did err under state
law in allowing the testimony, a state's misapplication of its
own law may constitute a violation of due process only in "rare"
cases.  See id. ("when that misapplication has the effect of
depriving a person of life, liberty, or property without due
process of law in violation of the Fourteenth Amendment, the

14

resulting federal constitutional error can be corrected by a federal habeas court").  Evidentiary rulings may violate due process when the petitioner "was denied fundamental fairness at trial."  Hutchins v. Hundley, 1991 WL 167036 at *4 (D.N.J. Aug. 22, 1991)(Wolin, J.)(citations omitted); see also Kontakis v. Beyer, 19 F.3d 110, 120 (3d Cir.), cert. denied, 513 U.S. 881 (1994); Lisenba v. California, 314 U.S. 219, 228, 236 (1941)(holding that state court's evidentiary rulings may form the basis for habeas relief when they "so infused the trial with unfairness as to deny due process of law").

The appropriate inquiry is "whether the claimed error of law is a fundamental defect which inherently results in a complete miscarriage of justice or in an omission inconsistent with the rudimentary demands of fair procedure."  Hutchins, 1991 WL 167036 at *4 (citing United States v. De Luca, 889 F.2d 503, 506 (3d Cir. 1989), cert. denied, 496 U.S. 939 (1990))(other citations omitted).  The Supreme Court has further stated that "an otherwise valid conviction should not be set aside if the reviewing court may confidently say on the whole record that the constitutional error was harmless beyond a reasonable doubt."  Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986).  An error is not harmless if "it aborts the basic trial process or denies it altogether."  Hutchins, 1991 WL 167036 at *5 (citing Rose v. Clark, 478 U.S. 570, 578 n.6 (1986)).

In the instant case, this Court finds that Petitioner's case is not the "rare" instance where evidentiary rulings have violated his rights to due process.  Thus, the Court finds that the testimony presented at trial and considered by the jury, including the testimony of Dinonno, the leader of the racketeering ring, Sommers, the victim, and the two investigating detectives, was sufficient to render Petitioner's conviction a valid conviction, and that he was not deprived of due process due to the admission of these statements.

Further, the state court determinations have not "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Accordingly, this ground for a writ of habeas corpus will be denied.

**E.   Petitioner's Claim Regarding Denial of Counsel.**

Petitioner argues that during deliberations, the jury sent a question to the judge.  Petitioner argues that there is no indication on the record that his counsel was notified of the question or that counsel was present in the courtroom when the trial judge responded.

16

The Appellate Division examined this claim on direct appeal, finding:

> The trial judge properly and fairly responded to the jury's unambiguous question of "what is a crime of violence." There is nothing on the record to support defendant's contention that defense counsel was not present when the judge instructed the jury after receiving the question. The record discloses that defendant's counsel was present prior to and after the instruction, and no objection was lodged to the trial judge's response to the jury's inquiry.

See State v. Curry, A-5971-00T4 (Sept. 25, 2003), p. 13.

The Sixth Amendment to the Constitution guarantees a criminal defendant the right to have the assistance of counsel. There no doubt that Petitioner was represented by counsel during his trial. As the Appellate Division found, there is nothing in the record to support Petitioner's claim that counsel was not present during the judge's instruction regarding their question.

As stated, supra, this Court on habeas review must confine its examination to evidence in the record. See Abu-Jamal v. Horn, 2001 WL 1609690, at *12 (E.D. Pa. December 18, 2001). This Court is required to apply a presumption of correctness to factual determinations made by the state court. See 28 U.S.C. § 2254(e)(1). The Court of Appeals for the Third Circuit has ruled that this presumption of correctness can be overcome only by clear and convincing evidence. See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir. 2001)(citing 28 U.S.C. § 2254(e)(1)). "A finding that is well-supported and subject to the presumption of

17

correctness is not unreasonable." <u>Abu-Jamal</u>, 2001 WL 1609690 at
*12 (citing <u>Duncan</u>, 156 F.3d at 198).

In the instant case, Petitioner has failed to demonstrate
that the state courts' factual determination concerning trial
counsel's presence during the jury question was unreasonable.
Nor has Petitioner shown that the state courts' decision in
denying Petitioner's claim was contrary to, or an unreasonable
application of, federal law.  Therefore, this claim must be
denied.

**F.   <u>Petitioner's Claim Regarding Jury Charge Errors.</u>**

Petitioner argues that the trial court erred in charging the
jury that the offense of criminal usury could be considered a
crime of violence sufficient to increase the racketeering charge
from a second degree offense to a first degree offense.

The trial judge charged, in relevant part:

> If you find the defendant is guilty of
> racketeering, a section of our law provides that any
> person who violates any provision of the racketeering
> law in connection with a pattern of racketeering
> activity which involves a crime of violence, shall be
> guilty of a crime of the first degree.  Any other
> violation of the racketeering law shall be a crime of
> the second degree.
> So, you have to look at the facts of this case and
> make a factual determination as to whether Mr. Curry
> violated a provision of the racketeering law in
> connection with the pattern of racketeering activity
> which involved a crime of violence.  So, you are going
> to have to make that factual determination.

<u>See</u> Trial Transcript, dated 2/11/97 at pp. 85-86.  The jury later

sent out a question: "What is a crime of violence?"  The trial

judge responded:

> Now, a literal explanation of that is under our
> Code, an offense defined by this Code or by any other
> statute of this State for which a sentence of
> imprisonment in excess of six months is authorized,
> constitutes a crime within the meaning of the
> Constitution of this State.  Crimes are designated in
> this Code as being of the first, second, third, or
> fourth degree.
>
> Now, a dictionary definition of violence is the
> exertion of physical force so as to injure or abuse.
>
> In the circumstances of this particular case, and
> in the circumstances of evaluating the first degree or
> second degree offense, you would have to find under the
> circumstances of this particular case, that the
> racketeering activity alleged, the usury, was a crime
> of violence.

See Trial Transcript, 2/11/97 at pp. 113-114.

The Appellate Division examined this argument on direct

appeal, finding:

> There was also no objection to the trial judge's
> instructions on the crime of first-degree racketeering.
> Moreover, the charge was complete, appropriate, and
> provided clear instructions concerning the difference
> between first an second-degree racketeering, including
> a specific instruction that in order to find defendant
> guilty of first-degree racketeering, the jury must find
> that defendant's activity involved a crime of violence.
> Viewed as a whole, the charge given by the trial judge
> was fair, clear and unambiguous.

See State v. Curry, A-5971-00T4 (Sept. 25, 2003), p. 13.

Challenges to jury instructions solely as in error under

state law do not state a claim cognizable in federal habeas

corpus proceedings.  See Engle v. Isaac, 456 U.S. 107 (1982);

Zettlemoyer v. Fulcomer, 923 F.2d 284, 309 (3d Cir.), cert. denied, 502 U.S. 902 (1991); Grecco v. O'Lone, 661 F. Supp. 408, 412 (D.N.J. 1987)(Thompson, J.)("Questions concerning instructions are normally matters of state law and are not cognizable in federal habeas corpus review.").  The finding by the state appeals court should be "the end of the matter of possible error based on the measuring of the evidence against the state law because state, not federal, courts decide these things."  Morgan v. Krenke, 232 F.3d 562, 567 (7th Cir. 2000), cert. denied, 532 U.S. 951 (2001).

Federal courts will evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process.  See Estelle v. McGuire, 502 U.S. 62 (1991); Cupp v. Naughten, 414 U.S. 141, 146 (1973); Henderson v. Kibbe, 431 U.S. 145, 154 (1977); United States ex rel. Harding v. Marks, 541 F.2d 402, 405 (3d Cir. 1976).  The court will then determine whether the ailing instructions so infected the entire trial so that the resulting conviction violated due process rendering the trial fundamentally unfair.  See Estelle, 502 U.S. at 71.  Thus, the Due Process Clause is violated only where "the erroneous instructions have operated to lift the burden of proof on an essential element of an offense as defined by state law."  Smith v. Horn, 120 F.3d 400, 416 (1997); see also In re Winship, 397 U.S. 358, 364 (1970) ("the Due Process Clause protects the

20

accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"); Sandstrom v. Montana, 442 U.S. 510, 523 (1979) (jury instructions that suggest a jury may convict without proving each element of a crime beyond a reasonable doubt violate the constitutional rights of the accused).

Where such a constitutional error has occurred, it is subject to "harmless error" analysis.  See Smith, 120 F.3d at 416-17; see also Neder v. United States, 527 U.S. 1, 8-11 (1999).  "[I]f the [federal habeas] court concludes from the record that the error had a 'substantial and injurious effect or influence' on the verdict, or if it is in 'grave doubt' whether that is so, the error cannot be deemed harmless."  Id. at 418 (citing California v. Roy, 519 U.S. 2, 5 (1996)).  In evaluating a challenged instruction:

> a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.  If the charge as a whole is ambiguous, the question is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution.

Middleton v. McNeil, 541 U.S. 433, 437 (2004) (internal quotations and citations omitted).

In the instant case, the Court finds that the jury instructions did not result in a fundamentally unfair trial or a violation of Petitioner's due process rights.  Evidence at trial

consisted of various witnesses' testimony, the credibility of which was to be weighed by the jury.  The trial judge did not direct the jury to find that criminal usury was a crime of violence.  Rather, the trial judge charged that the jury would have to find that usury was a crime of violence in order to convict Petitioner of a first degree offense.  There is no indication that the jury misapplied the challenged instruction; rather, the jury made a unanimous decision, and made a credibility determination to believe the state witness' testimony over Petitioner's defenses, and to find Petitioner guilty. Further, as explained by the Appellate Division, the trial judge's charges were adequate and proper.  However, even if the charge was improper, which neither the state courts nor this Court finds, any error would be considered harmless in that it did not have a substantial effect on the verdict.

Thus, Petitioner has not demonstrated that the actions of the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding."  Accordingly, this

ground for a writ of habeas corpus will be denied.[4]

<u>**CONCLUSION**</u>

For the foregoing reasons, the Petition for a Writ of Habeas

Corpus, pursuant to 28 U.S.C. § 2254 is denied.  The Court

further finds that no certificate of appealability will issue

because Petitioner has not made a substantial showing of the

denial of a constitutional right, as required by 28 U.S.C. §

2253.

An appropriate Order accompanies this Opinion.


<u>    S/Freda L. Wolfson    </u>
                      FREDA L. WOLFSON
                United States District Judge

Dated: October 14, 2005

---

[4]  Furthermore, Petitioner argues that the jury's verdict convicting him of first-degree racketeering violated <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000).  In <u>Apprendi</u>, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  <u>Id.</u> at 490.  Petitioner claims that the factual findings that comprised the verdict were constitutionally inadequate to convict for a first-degree offense.  Thus, he contends, his sentence has been enhanced improperly due to the first-degree verdict.  However, this claim is without merit as Petitioner's conviction on the first-degree offense was submitted to the jury, and the jury found it was proved beyond a reasonable doubt.  Nevertheless, Petitioner's sentence was not "enhanced" beyond the statutory maximum as contemplated in <u>Apprendi</u>.